UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DUANE JOSEPH JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-0424 (RBW) |
| | ) | |
| EXECUTIVE OFFICE FOR | ) | |
| UNITED STATES ATTORNEYS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Executive Office for United States Attorneys ("EOUSA"), respectfully moves for judgment as a matter of law. In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities, statement of material facts not in genuine dispute, and the declaration of the Defendant.

*Pro se* Plaintiff will please take note that the assertions contained in the accompanying declaration and other attachments in support of Defendant's motion will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in Defendant's declaration and attachments. See <u>Neal v. Kelly</u>, 963 F.2d 453, 456 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e); Local Civil Rule 7.

June 29, 2006                          Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C.  BAR# 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-1249
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DUANE JOSEPH JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-0424 (RBW) |
| | ) | |
| EXECUTIVE OFFICE FOR | ) | |
| UNITED STATES ATTORNEYS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Defendant, Executive Office for United States ("EOUSA"), respectfully submits this statement of material facts as to which there are no genuine disputes in accordance with this Court's Local Rule 7(h). The declaration of David Luczynski, Attorney Advisor, EOUSA supports this statement.

1.    On January 6, 2005, the EOUSA FOIA Privacy Act Unit received a FOIA request from Plaintiff. Declaration of David Luczynski ("Luczynski Decl.") ¶ 4, attached as Exhibit 1. In this letter Plaintiff requested disclosure of "the discovery request made by attorney Frederick J. Sullivan" and "the medical examiner Dr. Humphrey Den Germaniuks' expert opinions." Id.

2.    By letter dated January 18, 2005, Defendant acknowledged Plaintiff's request and provided him with a FOIA reference number, No. 05-95. Luczynski Decl. ¶ 5. This letter also informed Plaintiff that his request would be processed in the order that it was received and could take more time to process than the statutory period. Id.

3.    By letter dated August 3, 2005, Plaintiff inquired about the status of his FOIA request and urged that it be processed "with a bit more zeal." Luczynski Decl. ¶ 6.

4.      By letter dated September 1, 2005, Defendant responded to Plaintiff's August 3, 2006 letter.  Luczynski Decl. ¶ 7.  Defendant informed Plaintiff that it was unable to process his request as of the letter's date.  Id.  Defendant further informed Plaintiff of his right to an administrative appeal of this action and provided him with contact information for the Office of Information Privacy ("OIP").  Id.

5.      On September 22, 2005, OIP received Plaintiff's appeal.  Luczynski Decl. ¶ 8. The OIP informed Plaintiff, by letter dated September 25, 2005, that it had received his appeal and that it had assigned it appeal No. 05-2841.  Luczynski Decl. ¶ 9.

6.      To this day OIP has been unable to rule on Plaintiff's appeal because there was no determination made by EOUSA.  Luczynski Decl. ¶ 10.  EOUSA could make no determination because records were unavailable.  Id.  Finally, a thorough search of the United States Attorney's Office for the District of Columbia proved successful in locating 10 pages of records relating to Plaintiff.  Id.

7.      Upon receiving Plaintiff's FOIA request, the EOUSA forwarded the request to the FOIA Contact for the District of Columbia.  Luczynski Decl. ¶ 13.  Each United States Attorney's Office maintains the case files for criminal matters prosecuted by that office.  Id. The FOIA Contact began a systematic search for records on Duane Johnson to determine the location of any and all files relating to him in order to comply with the request.  Id.  The FOIA Contact searched for records from the case files in that case.  Id.  The FOIA Contact for the District of Columbia informed EOUSA that records responsive to Plaintiff's request were found in that office.  Id.

8.      To accomplish the search, the FOIA Contact looked for records in the computer

tracking system for the USAO/DC that were listed under the name "Johnson." Luczynski Decl. ¶ 14. The FOIA Contact used a computer case tracking system in the U.S. Attorney's Office to determine all possible locations of responsive files. <u>Id.</u>

9.    The systems utilized in searching for records pertaining to Plaintiff were the Public Access to Court Electronic Records ("PACER"), and the Legal Information Office Network System ("LIONS"). Luczynski Decl. ¶ 15. The LIONS system is the computer system used by United States Attorneys offices to track cases and to retrieve files pertaining to cases and investigations. <u>Id.</u> By use of the LIONS system, the user can access databases which can be used to retrieve the information based on a defendant's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case number. <u>Id.</u> In this case, the FOIA Contact used the LIONS system to locate records based upon the name "Johnson." <u>Id.</u>

10.    All documents responsive to Plaintiff's FOIA request have been located in the United States Attorneys Office for the District of Columbia ("USAO/DC") records. Luczynski Decl. ¶ 16. These records are maintained in the Criminal Case File System (Justice/USA-007) entitled "United States v. Duane Johnson." <u>Id.</u> The case pertains to the investigation, prosecution, and conviction of the Plaintiff for his crimes involving the distribution of crack cocaine and murder. <u>Id.</u>

11.    There are no other records systems or locations within the District of Columbia in which other files pertaining to Plaintiff's criminal case, were maintained. Luczynski Decl. ¶ 17.

12.     On June 21, 2006, Plaintiff was provided with records responsive to his request,

amounting to 3 pages of records which will be released in full ("RIF").   Luczynski Decl. ¶ 11.

13.     The remaining 7 pages of records are non-responsive to Plaintiff's request and

will be withheld in full ("WIF").  Luczynski Decl. ¶ 12.

14.     Each step in the handling of Mr. Johnson's request was entirely consistent

with the EOUSA and the United States Attorney's Office procedures which were adopted to

insure an equitable response to all persons seeking access to records under the FOIA/PA.

Luczynski Decl. ¶29.

June 29, 2006                                           Respectfully submitted,


                                                _____/s/_____
                                                KENNETH L. WAINSTEIN, D.C.  BAR# 451058
                                                United States Attorney


                                                _____/s/_____
                                                RUDOLPH CONTRERAS, D.C. Bar # 434122
                                                Assistant United States Attorney


                                                _____/s/_____
                                                JOHN F. HENAULT, D.C. Bar # 472590
                                                Assistant United States Attorney
                                                Civil Division
                                                555 4th Street, N.W.
                                                Washington, D.C. 20530
                                                (202) 307-1249
                                                (202) 514-8780 (facsimile)

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DUANE JOSEPH JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 06-0424 (RBW) |
| | ) |
| EXECUTIVE OFFICE FOR | ) |
| UNITED STATES ATTORNEYS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

This case involves Defendant Executive Office of U.S. Attorneys' ("EOUSA's") duty under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act ("PA"), 5 U.S.C. § 552a, to process a request made by the plaintiff for information about himself. Plaintiff's files encompass ten pages which have been extensively reviewed.  Three out of the ten pages have been processed for release to him.  In short, as of the filing of this motion, the EOUSA has made available to the plaintiff all of the non-exempt, responsive documents in its possession.  Defendant withheld seven pages of documents that were not responsive to plaintiff's request.  For those seven pages, however, defendant has detailed why its withholding would be permissible under FOIA,  in the accompanying Declaration of David Luczynski, Attorney Advisor, EOUSA, FOIA/PA Unit ("Luczynski Decl.").  Accordingly, because Defendant EOUSA has fully performed its statutory duty and there are no genuine issues of material fact, Defendant EOUSA is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

Defendant respectfully submits this memorandum of points and authorities in support of its motion for summary judgment.

## I. Background

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and concerns the Plaintiff's FOIA request to EOUSA. Plaintiff was convicted of crimes involving the distribution of crack cocaine and murder. Luczynski Decl. ¶ 16. Plaintiff is an inmate of Petersburg Federal Correctional Institution in Petersburg, Virginia. His requests sought information about "the discovery requests made by attorney Frederick J. Sullivan" and "the medical examiner Humphrey Den Germaniuks' expert opinions." Luczynski Decl. ¶ 4.

EOUSA located ten (10) pages of possibly-responsive material, released three (3) pages in their entirety, and withheld seven (7) pages in their entirety as non-responsive and under the permissible FOIA exemptions. Luczynski Decl. ¶¶ 10-12. Defendant withheld only attorney work product and deliberative process privileged materials (Exemption 5) and personal information of individuals named in the records (Exemption 7).

As set forth in detail in the accompanying Statement of Material Facts and agency declaration, Defendant has fully and appropriately responded to Plaintiff's FOIA requests, producing to him all reasonably segregable, non-exempt information. Defendant therefore has satisfied its obligations under FOIA, and is entitled to summary judgment.

## II. Legal Standards

### A.     Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one

2

that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of

evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Co.,

Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

    Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid

summary judgment, the Plaintiff must present some objective evidence that would enable the

court to find he is entitled to relief.  In Celotex Corp. v. Catrett, the Supreme Court held that, in

responding to a proper motion for summary judgment, the party who bears the burden of proof

on an issue at trial must "make a sufficient showing on an essential element of [his] case" to

establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

    In Anderson, the Supreme Court explained under what circumstances summary judgment

is appropriate:

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the Plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir.  1987)

(the non-moving party is "required to provide evidence that would permit a reasonable jury to

find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[1] See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by

---

[1] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

evidence of agency bad faith.'" <u>Trans Union LLC v. Federal Trade Commission</u>, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (<u>quoting</u> <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981)); <u>see</u> <u>also</u> <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983); <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1329 (9th Cir. 1995); <u>Bowen v. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991).  When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  <u>Perry v. Block</u>, 684 F.2d 121 (D.C. Cir. 1982).

### B.    Standards for a Proper Search for Responsive Records

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993); <u>Weisberg v. U.S. Dept. of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material.  <u>Id.</u> at 777 n.4.  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  <u>Oglesby</u>, 920 F.2d at 68.  Simply stated, the adequacy of  the search is "dependent upon the circumstances of the case."  <u>Truitt v. Dept. of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  <u>Nation Magazine v. U.S. Customs Serv.</u>,

71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'"  Miller v. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing National Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978).  Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search.  Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  Miller, 779 F.2d at 1383.  A requester may

not rebut agency affidavits with purely speculative allegations. <u>See</u> <u>Carney</u>, 19 F.3d at 813; <u>SafeCard</u>, 926 F.2d at 1200; <u>Maynard v. CIA</u>, 986 F.2d 547, 559-560 (1st Cir. 1993).

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." <u>Steinberg v. Dept. of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994) (<u>quoting</u> <u>Weisberg v. Dept. of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

### C.    Standards for A Proper <u>Vaughn</u> Index

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." <u>Judicial Watch v. U.S. Dept. of Health and Human Services</u>, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits (singly or collectively) are often referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94 S. C. 1564 (1974). There is no set formula for a <u>Vaughn</u> index. "[I]t is well established that the critical elements of the <u>Vaughn</u> index lie in its function, and not in its form." <u>Kay v. FCC</u>, 976 F. Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." <u>Delaney, Midgail & Young, Chartered v. IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987). <u>See also</u> <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987); <u>Hinton v. Dept. of Justice</u>, 844 F.2d 126, 129 (3d Cir. 1988).[2]

---

[2] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." <u>Id</u>. "The degree of specificity of

The <u>Vaughn</u> Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption.  <u>See</u>  <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA."  <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

> **D.**    **Legal Standards for Applicable Exemptions to Release under FOIA**

> **1.**    **Exemption 5**

Title 5, United States Code,  § 552 (b)(5) (hereinafter Exemption 5) protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  In other words, this exemption protects documents normally privileged in the civil discovery context.  <u>United States v. Weber Aircraft Corp.</u>, 465 U.S. 792, 799 (1984) ("exemption 5 simply incorporates civil discovery privileges"); <u>FTC v. Grolier Inc.</u>, 462 U.S. 19, 26 (1983); <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 149 (1975).  This section of the FOIA incorporates, *inter alia*, the attorney-client privilege, the attorney work-product doctrine, and the executive "deliberative process privilege that protects candid internal discussions of legal or policy matters."  <u>Maricopa Audubon Soc'y v. United States Forest Serv.</u>, 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

---

itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted."  <u>Information Acquisition Corp. v. Dept. of Justice</u>, 444 F. Supp. 458, 462 (D.D.C. 1978).

The protections of Exemption 5 as to the attorney work-product privilege, as well as the other privileges, are not limited to civil litigation.  Rather, courts have either explicitly or implicitly recognized that the privileges are applicable to criminal prosecutions by upholding under Exemption 5 the nondisclosure of documents prepared in criminal investigations and prosecutions.  See Antonelli v. Sullivan, 732 F.2d 560, 561 (7th Cir. 1983); Ferri v. U.S. Dept. of Justice, 573 F. Supp. 852, n. 33 (W.D. Pa. 1983); Harvey v. U.S. Dept. of Justice, 747 F. Supp. 29, 37 (D.D.C. 1990); Durham v. U.S. Dept. of Justice, 829 F. Supp. 428, 433 (D.D.C. 1993); Jimenez v. FBI, 938 F. Supp. 21, 28 (D.D.C. 1996).  Courts have held that "if material is exempt from FOIA disclosure because of [a civil discovery] privilege, the exemption does not terminate at the close of the litigation for which the material was prepared."  See FTC v. Grolier, Inc., 462 U.S. 19, 28 (1983).  See also Grove v. Dept. of Justice, et al., 802 F. Supp. 506, 514 (D.D.C. 1992).

### a.    Attorney Work Product Privilege

The attorney work-product privilege protects "the files and the mental impressions of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs...and countless other tangible and intangible ways prepared in anticipation of litigation," particularly those documents which set forth the attorney's theory of the case and litigation strategy.  A. Michael's Piano, Inc. v. Federal Trade Comm'n, 18 F.3d 138, 146 (2d Cir. 1994) (citing Hickman v. Taylor, 329 U.S. 495, 509-11 (1947)).  "At its core, the work product doctrine shelters the mental processes of the attorney."  United States v. Noble, 422 U.S. 225, 238 (1975).  Courts have long recognized this doctrine because it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their

counsel." Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 864 (D.C. Cir.

1980) (citing Hickman, 329 U.S. at 509-11).

To qualify for the protection of the attorney work product privilege, a document must

have been created by or at the direction of an attorney in anticipation of litigation.  The litigation

anticipated need not be imminent, as long as the motivating factor behind the creation of the

document was to aid in possible future litigation.  U.S. v. Davis, 636 F.2d 1028, 1040 (5th Cir.

1981); A. Michael's Piano, 18 F.3d at 146; Hickman, 329 U.S. at 511.

### b.    Deliberative Process Privilege

"The deliberative process privilege, also known as the 'executive' or 'governmental'

privilege serves many purposes."  Eugene Burger Management Corp. v. U.S. Dept. of Housing

and Urban Development, 192 F.R.D. 1, 4 (D.D.C. 1999).  The main purpose of this privilege

"which is well established in the law, is...to 'prevent injury to the quality of agency decisions.'"

Cofield, et al. v. City of LaGrange, Georgia, 913 F. Supp. 608, 615 (D.D.C. 1996) (quoting

NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975)).  The deliberative process privilege

prevents harm to the quality of agency decisions by shielding the opinions, conclusions, and

reasoning used in the administrative and decision making process of the Government.  See

United States v. Morgan, 313 U.S. 40, 422 (1941); Petroleum Info Corp. v. Dept.  of the Interior,

976 F.2d 1429, 1434 (D.C. Cir. 1992); Access Reports v. Dept. of Justice, 926 F.2d 1192, 1194-

1195 (D.C. Cir.  1991); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993).

The privilege is designed to encourage frank and uninhibited communication among

government officials in the course of creating public policy.  NLRB v. Sears, Roebuck & Co.,

421 U.S. 132, 149-151 (1975); Petroleum Info Corp., 976 F.2d at 1434; Access Reports, 926

F.2d at 1194-1195; Farley, 11 F.3d at 1389.  The deliberative process privilege remains even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice."  Federal Open Market Committee v. Merrill, 443 U.S. 340, 360 (1979).

Since "Exemption 5 'was intended to protect not simply the deliberative material, but also the deliberative process of agencies,'" National Wildlife Federation v. U.S. Forest Service, 861 F.2d 1114, 1118 (9th Cir. 1988) (quoting Montrose Chemical Corp. of California v. Train, 491 F.2d 63, 71 (D.C. Cir. 1974)), the courts have found that even factual materials are encompassed within the privilege, if release of such materials would harm the overall deliberative process.

For a document to be covered by the deliberative process privilege, two requirements must be satisfied.  First, it must be predecisional, i.e., "antecedent to the adoption of agency policy."  Jordan v. U.S. Dept. of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc).  In determining whether a document is predecisional, the Supreme Court has held that an agency need not identify a specific decision in connection with which a document is prepared.  NLRB v. Sears, Roebuck & Co., 421 U.S. at 151 n.18.  The Court recognized that agency deliberations do not always ripen into agency decisions, and that ultimately the privilege is meant to protect the decisional process, rather than any particular document or decision.  Id.; see also Dudman Communications Corp. v. Dept. of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes -- not to protect specific materials.").  It is sufficient for the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States Gas Corp. v. Dept. of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).

Second, the document must be deliberative in nature, i.e., it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975). Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. at 150. Thus, the exemption covers recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process. Coastal States, 617 F.2d at 866.

### 2. Exemption 7--Threshold Issue

Application of any of FOIA's exemptions in Exemption 7 requires the agency to satisfy the threshold issues of, first, whether the agency has the requisite law enforcement purpose in compiling the records at issue and, second, whether the information gathered has a sufficient nexus to the law enforcement purpose. See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 76-79 (D.C. Cir. 2002); Jefferson v. DOJ, 284 F.3d 172, 176-77 (D.C. Cir. 2002); Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998); Pratt v. Webster, 673 F.2d 408, 419 (D.C. Cir. 1982).

In Jefferson, the court drew a distinction between agencies gathering information as part of any government agency's "oversight of the performance of duties by its employees," and information sought as part of investigations into illegal conduct for which the agency might impose criminal or civil sanctions. 284 F.3d at 177. Thus, the rule from Jefferson provides a broadly applicable distinction based more on the agency's mission and reasons for collecting the information at issue.

12

Many types of agency activities have been upheld as having law enforcement purpose, even several that arguably go beyond the core law enforcement mission of investigating crimes that have been committed.  See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose; Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (Robertson, J.) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

In addition, the case law in this circuit is unambiguous that the agency need not tie its collection of information to any specific or ongoing investigation.  See Tax Analysts, 294 F.3d at 78; Keys 830 F.2d at 342.  This is fully consistent with the courts' broad acceptance that the 1986 amendments to FOIA relaxed the required threshold showing for Exemption 7.  See, e.g., United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 780 (1989) (recognizing that the shift from "would constitute" standard to "could reasonably be expected to constitute" standard represents a congressional effort to ease considerably the burden in invoking Exemption 7); S. Rep. No. 221, 98th Cong., 1st Sess. 25 (1983) ("Substitute 'records or information' for 'investigatory records' as the threshold qualification for the exemption: This amendment would broaden the scope of the exemption to include 'records or information compiled for law enforcement purposes,' regardless of whether they may be investigatory or noninvestigatory."); Hopkinson v. Shillinger, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989) ("The 1986 amendment[s] broadened the scope of exemption 7's threshold requirement.").

### a.    Exemption 7 (c)

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (c) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).  Indeed, an agency in a FOIA case may categorically assert Exemption 7(c) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity.  Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7 (c).  Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity.  Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to

ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish their privacy interests. Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg, 745 F.2d at 1491.

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure. Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989). The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ding] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitzgibbon, 911 F.2d at 768. See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling, in order to overcome legitimate privacy interests. Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

### E.    Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022,

1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt

from disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566

F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements." Mead Data,

566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed.  Id.  All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." Mead Data, 566 F.2d at 261, n.55.

## III.    The Defendant Has Complied with FOIA Requirements

EOUSA's compliance with FOIA is set forth in the declaration of David Luczynski,

attached to Defendant's Statement of Material Facts as Exhibit 1.

### A.    Defendant Complied With FOIA Requirements by Conducting an Adequate Search

EOUSA located a total of ten (10) pages of possibly-responsive material.  Luczynski

Decl. ¶ 10.  The Luczynski declaration describes each of the systems searched by the FOIA

Contact for the District of Columbia, including the Public Access to Court Records ("PACER")

and the Legal Information Office Network ("LIONS").  See Luczynski Decl. ¶ 15.  In addition,

the Luczynski declaration describes the method of searching the investigative files for responsive information. The methodology was straight-forward and appropriate, Luczynski Decl. ¶¶ 16-17, and accordingly, the Court should find the search was reasonable and complies with FOIA.

**B.      Defendant Produced an Adequate Declaration**

Not only are the seven pages withheld in their entirety non-responsive to plaintiff's request, but EOUSA produced a declaration which adequately described the seven pages of records that were withheld in their entirety and why EOUSA's withholding is permissible under FOIA. See Luczynski Decl. at ¶¶ 23, 27. The declaration, which comprises eight pages, with ten pages of exhibits, describes with particularity each document by providing, where possible, the author(s) of the document, the recipient(s), the type of document, the number of pages, and the document's general subject matter. This information and descriptions provide the "reasonable basis to evaluate the claim of privilege" as required by Delaney, 826 F.2d at 128. In certain instances, even this limited information was withheld because release would have compromised the purpose of one or more of the exemptions to release under FOIA.

**C.      EOUSA Properly Invoked FOIA Exemptions**

**1.      Exemption 5**

EOUSA claims Exemption 5 for the six pages of a written closing statement of the prosecuting attorney. See Luczynski Decl. ¶¶ 19-23. The pages contain handwritten notes on the margins. Luczynski Decl. ¶ 23. None of the content is responsive to Plaintiff's FOIA request. Id. For these six pages, EOUSA claims attorney work-product and deliberative process privileges. Luczynski Decl. ¶ 20.

17

Defendant properly claims attorney work-product.  These six pages reflect matters such as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to the Plaintiff.   Luczynski Decl. ¶ 21.  The records were prepared by or at the request or direction of an attorney, and made in anticipation of or during litigation.  Id.  Accordingly, this closing statement was written during litigation and consisted of the mental processes of the attorney assigned.  See id.  Accordingly, the claim of privilege should be upheld.

For these six pages of records, Defendant also asserts deliberative process privilege. Luczynski Decl. ¶ 22 .   These same records also contain the deliberative process of the United States Attorney's Office and other federal and state agencies in their consideration of possible criminal actions against the Plaintiff.  Id.  To disclose this information would reveal pre-decisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies.  Id.  Disclosure would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making.  Id. The attorney work product and deliberative process are so interwoven as to make it all, in essence, attorney work product.  Id.  Accordingly, this document is both pre-decisional and deliberative and the claim of privilege should be upheld.

### 2.    Exemption 7 (C)

EOUSA easily satisfies the threshold issues necessary to claim any of the exemptions in Exemption 7.  First, the agency collected this information on Plaintiff because he was charged with crimes involving murder and distribution of crack cocaine and so it had a law enforcement purpose when it collected the information.  Second, that information had a sufficient nexus to the law enforcement purpose (investigation, prosecution, and conviction of an individual charged

18

with several felonies). Thus, EOUSA met the threshold requirement for claiming exemptions under Exemption 7.

EOUSA claims Exemption 7(c) for the single page that contains a medical examiner's notes relating to the cause of the victim's death. Luczynski Decl. ¶¶ 24-27. EOUSA claims this exemption in order to protect the names and addresses and other identifying information that would reveal the identity of and disclose personal information about the individuals who were involved or associated with Plaintiff or the investigation. Luczynski Decl. ¶ 25. In making the determination to release or withhold the information, the individual's privacy interests were balanced against any discernible public interest in disclosure of the individuals identities. Luczynski Decl. ¶ 26. Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure. Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. at 855 . The public interest in disclosure of the information is determined by whether the information in question would inform the general public about the activities and operations of the EOUSA or the United States Attorney's Office. Luczynski Decl. ¶ 26. In this case, where there is no apparent public interest served, and none was cited or articulated by Plaintiff , the privacy interests of the individuals outweighed any potential interest. Id. Disclosure of all third party identities was considered an unwarranted invasion of privacy, and EOUSA properly withheld the information pursuant to Exemption (b)(7)(c).

### D. EOUSA Properly Segregated Where Appropriate

EOUSA's declaration specifically addresses the issue of segregability and attests to the agency's review of each page of each document for segregability. See Luczynski Decl. ¶ 28.

19

Where a document was withheld in its entirety, EOUSA determined that no meaningful portions could reasonably be released without destroying the integrity of such document as a whole.  Id. Plaintiff was provided with all information which did not reveal information protected by statute or which, if disclosed, would violate the personal privacy of third parties.  Id.  The documents withheld in full by EOUSA were carefully analyzed for segregability purposes.  Id.  No reasonably segregable non-exempt information was withheld from Plaintiff.  Id.  Accordingly, EOUSA complied with its segregation obligations under Mead Data Central.

## IV.    CONCLUSION

Wherefore, the Defendant respectfully requests that the Court grant its motion for summary judgment and enter judgment in its favor.

June 29, 2006                              Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C.  BAR# 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-1249
(202) 514-8780 (facsimile)

20

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing Defendant's Motion for Summary Judgment,

Statement of Material Facts, and Memorandum in Support of the Motion were served upon *pro*

*se* Plaintiff by depositing copies in the U.S. Mail, first class postage prepaid, addressed to:


Duane Joseph Johnson
No. 09202-007
Petersburg Federal Correctional Institution
P.O. Box 90043
Petersburg, Virginia 23804


on this 29th day of June 2006.


                             /s/
                         JOHN F. HENAULT, D.C. Bar # 472590
                         Assistant United States Attorney
                         Civil Division
                         555 4th Street, N.W.
                         Washington, D.C. 20530
                         (202) 307-1249
                         (202) 514-8780 (facsimile)